**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 7 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

### TENH CIRCUIT

---

UNITED STATES OF AMERICA, ex rel.
LANCE E. HAFTER, D.O.; GEORGE R.
SCHWARTZ, M.D.,

    Plaintiffs-Appellants,

v.

SPECTRUM EMERGENCY CARE, INC., now
known as Spectrum Healthcare Resources, Inc.;
SPECTRUM HEALTHCARE SERVICES OF
DELAWARE, INC., a/k/a Spectrum Healthcare
Services, Inc.,

    Defendants-Appellees.

and

EMCARE HOLDINGS; AMERICAN
MEDICAL RESPONSE, INC.; LAIDLAW
TRANSIT, INC.; ARAMARK CORPORATION;
ARAMARK SERVICES, INC.; LAIDLAW,
INC.,

    Defendants.

No. 98-3209

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 96-CV-1095-JTM)**

---

Chan P. Townsley (Mark B. Hutton with him on the briefs) of Hutton & Hutton,
Wichita, Kansas, for Plaintiffs-Appellants.

Kathleen A. Buck (James W. Rankin, G. Christian Kronberg, and Dexter Nutall of Kirkland & Ellis, Washington, D.C.; Robert L. Howard, Gary L. Ayers and Martha Aaron Ross of Foulston & Siefkin, L.L.P., Wichita, Kansas, with her on the brief) of Kirkland & Ellis, Washington, D.C., for Defendants-Appellees.

---

Before **PORFILIO, BRORBY** and **MURPHY**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

This appeal involves the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729 - 3733 ("the Act"). These provisions allow private individuals to commence actions on behalf of the United States against persons who present false or fraudulent claims to the federal government. The Act also contains jurisdictional limits on those who may bring *qui tam* actions and it specifically bars all *qui tam* suits based upon publicly disclosed information unless the person bringing the action is an "original source" of the information. 31 U.S.C. § 3730(e)(4)(A). The primary issue in this case is whether the *qui tam* plaintiffs or relators, Dr. Lance Hafter and Dr. George Schwartz, qualify as "original sources" under § 3730(e)(4)(B).

Drs. Hafter and Schwartz claim Appellees Spectrum Emergency Care, Inc. and other affiliated organizations ("Spectrum") obtained payment from the United States for false and fraudulent Medicare, Medicaid and/or Champus reimbursement

claims. The district court granted Spectrum's motion to dismiss on the ground it lacked subject matter jurisdiction to hear the case. The court concluded Appellants based their suit on information previously disclosed in a state court civil suit and that Appellants were not original sources of that information. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. Background

The facts of this case center around the emergency room at the Dallas/Fort Worth Medical Center ("the Medical Center"). Beginning in 1988, the Medical Center contracted with an outside organization called Texas Emergency Room Services, P.A. ("Texas Services") to staff its emergency room with physicians. Pursuant to this contract, Texas Services employed emergency care physicians as independent contractors and placed them in the Medical Center's emergency room. Texas Services also hired "medical directors" to perform various administrative tasks in the emergency room. Texas Services, in turn, contracted with Appellee Spectrum for Spectrum's administrative and management services, including accounting and financial functions and the development of credentialing information on physicians recruited to work in the Medical Center emergency room.

Dr. Hafter performed a dual role in the Medical Center's emergency room. He was both an emergency room physician under independent contract with Texas Services as well as a medical director, responsible for supervising emergency room services and physicians. He performed these services from 1988 until 1993, when the Medical Center terminated its contract with Texas Services and Texas Services terminated its contract with Dr. Hafter.

Soon after Dr. Hafter's employment at the Medical Center ended, he received a call from an attorney researching a medical malpractice case. The attorney, Mr. Cameron Spradling, contacted Dr. Hafter in hopes of obtaining information about the treatment his client received in the Medical Center emergency room in 1991. Dr. Hafter apparently remembered the patient, Mr. Nikkie Mallory, and the physician responsible for treating him, Dr. James Chepko, and agreed to speak with Mr. Spradling about the case. [1] During their interview, Dr. Hafter told Mr. Spradling numerous things, not only about Mr. Mallory's treatment, but also about Texas Services' and Spectrum's management of the

---

[1] Nikkie Mallory, a twenty-three-year-old Navy serviceman, was admitted to the Medical Center emergency room March 20, 1991 as a result of injuries he sustained when struck in the head by a basketball. Mr. Mallory was treated and released that afternoon and the next morning suffered a stroke, resulting in permanent physical and mental disabilities.

emergency room physicians. According to Mr. Spradling's affidavit, Dr. Hafter told him Texas Services operated as a "sham entity" and Spectrum actually controlled the independent contractor physicians and told them how to practice medicine. Dr. Hafter explained how Texas Services compensated the independent contractor physicians and about the coding system, developed by Spectrum, which physicians used to charge for their services. Dr. Hafter expressed displeasure both with the way Spectrum treated the emergency room physicians and with Spectrum's receipt of twenty to thirty percent of the fees generated by the physicians as a management fee despite the fact that the physicians did all the quality assurance. Further, Dr. Hafter told Mr. Spradling that Dr. Chepko did not physically see Mr. Mallory during his emergency room visit and that the Medical Center received other complaints by patients seen only by a medical student or intern and not an actual emergency room physician.

As a result of this information, Mr. Spradling claims his case "began to take a new turn in regard to the investigation of non-medical matters." Eventually, Mr. Spradling amended the Mallory complaint to include allegations that Texas Services and Spectrum violated the Texas Medical Practices Act, which prohibits

the corporate practice of medicine. [2] Mr. Spradling enlisted Dr. Hafter to serve as a fact witness in the case. Dr. Schwartz, the other relator in this case, served as an expert witness. [3] Mr. Spradling claims that prior to his conversation with Dr. Hafter, he "had no knowledge of Spectrum's fraud as later alleged in the Nikkie Mallory lawsuit." [4]

Approximately one year after the filing of the Mallory suit, Dr. Hafter filed the instant *qui tam* suit alleging Spectrum submitted false and fraudulent Medicare, Medicaid and/or Champus reimbursement claims to the government. As required under the False Claims Act, Dr. Hafter provided the government with a copy of his complaint and a disclosure statement. *See* 31 U.S.C. § 3730(b)(2).

---

[2] In addition to various allegations of professional negligence, the Mallory complaint asserts Texas Services acted as a sham entity and Spectrum used Texas Services, a professional association, to avoid the Texas Medical Practices Act prohibition against corporate entities contracting with hospitals to provide physician staffing services. The Mallory complaint also alleges Spectrum's receipt of a majority of the profits made by the Texas Services physicians allowed Spectrum to indirectly practice medicine without a license in violation of Texas law.

[3] Dr. Schwartz negotiated to become an independent contractor physician for Spectrum, but never finalized an agreement and never worked at the Medical Center.

[4] Mr. Spradling was featured in an article in the Texas Lawyer about the case. The article makes no mention of Dr. Hafter or his role in the investigation.

After an investigation, the government declined to intervene and the district court ordered the Complaint unsealed and served on Spectrum. Subsequently, Spectrum moved to dismiss for lack of subject matter jurisdiction or, in the alternative, for failure to plead fraud with particularity, to which Dr. Hafter filed a response. Before the court ruled on that motion, it consolidated Drs. Hafter and Schwartz's separate cases into one cause of action. The district court then granted Spectrum's renewed motion to dismiss Drs. Hafter and Schwartz's combined Second Amended Complaint.

In its order, the court first determined the information underlying the complaint had been publicly disclosed in the Mallory suit and, as such, jurisdiction was proper only if the Appellants qualified as original sources of the information. To qualify as original sources, the court required Appellants to show: (1) they possessed direct and independent knowledge of all the essential elements of the fraud allegations, and (2) they provided the government with the information prior to the public disclosure. Because Appellants failed to meet either requirement, the court concluded it lacked jurisdiction and dismissed the suit. Drs. Hafter and Schwartz appeal, arguing the district court erred by (1) concluding they lacked direct and independent knowledge of the information underlying their Complaint and (2) requiring them to provide government notice prior to any public disclosure

in order to qualify as original sources.

## II. Standard of Review

As the parties correctly note, the statutory provisions of 31 U.S.C. § 3730(e)(4) implicate the district court's subject matter jurisdiction. Jurisdictional challenges brought under that section arise out of the same statute creating the cause of action (*i.e.*, the False Claims Act) and are thus necessarily intertwined with the merits of the case. *United States ex rel. Fine v. MK-Ferguson Co.*, 99 F.3d 1538, 1543 (10th Cir. 1996). As such, the court's jurisdictional inquiry should be resolved under Federal Rule of Civil Procedure 12(b)(6) or, after proper conversion into a motion for summary judgment, under Rule 56. *Id.* In the present case, the district court apparently treated defendant's motion as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). However, because the jurisdictional question was intertwined with the merits, and because the court relied on affidavits and other evidentiary material submitted by the parties, Spectrum's motion to dismiss should have been treated as one for summary judgment under Rule 56(c). *United States ex rel. Ramseyer v. Century Healthcare Corp*., 90 F.3d 1514, 1518 (10th Cir. 1996). Accordingly, we exercise our plenary power and consider Spectrum's motion as a motion for summary

judgment. [5] *Id.*

We review the grant of summary judgment de novo, applying the same legal standard that would be used by the district court.     *MK-Ferguson* , 99 F.3d at 1543. Summary judgment is appropriate if the pleadings, depositions, discovery, and admissions on file, together with any affidavits, show no genuine issue of material

---

[5] Whether we consider Spectrum's motion as a motion to dismiss under Rule 12(b)(1) or a motion for summary judgment, Appellants' burden remains essentially the same – they must present affidavits or other evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence. *See Trentacosta v. Frontier Pacific Aircraft Indus., Inc.*, 813 F.2d 1553, 1559 (9th Cir. 1987) (noting that nonmovant's burden under Rule 12(b)(1) is essentially the same as Rule 56(e)'s requirement that the nonmoving party to a motion for summary judgment set forth specific facts, beyond his pleadings, to show that a genuine issue of material fact exits); *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (noting that when a Rule 12(b)(1) motion challenges the substance of a complaint's jurisdictional allegations, the nonmovant must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." (Quotation marks and citation omitted.). Appellants do not contest this burden. However, in their reply brief, they argue because the district court granted Spectrum's renewed motion to dismiss their Second Amended Complaint before they could file a joint response, the district court failed to give them an adequate opportunity to meet their burden and that this failure amounts to a due process violation warranting reversal. Because Appellants raised this argument for the first time in their Reply Brief, we decline to review it. *See Headrick v. Rockwell Int'l Corp*., 24 F.3d 1272, 1277-78 (10th Cir. 1994). Nevertheless, we note that at the time they filed their Second Amended Complaint, Appellants knew Spectrum contested the district court's jurisdiction due to public disclosure. Thus, both Drs. Schwartz and Hafter had an opportunity to sufficiently plead their original source status in the Second Amended Complaint and attach the proof necessary to support those allegations.

fact and that the moving party is entitled to judgment as a matter of law.    *See Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996).

This court also reviews issues of subject matter jurisdiction de novo.    *United States ex rel. Precision Co. v. Koch Indus.*, *Inc.*, 971 F.2d 548, 551 (10th Cir.1992), *cert. denied*, 507 U.S. 951 (1993).  Since federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction.    *Precision*, 971 F.2d at 551 (citing *Penteco Corp. Ltd. Partmership v. Union Gas Sys. Inc.*, 929 F.2d 1519, 1521 (10th Cir.1991)).  If jurisdiction is challenged, the burden is on the party claiming jurisdiction to show it by a preponderance of the evidence.    *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994).  Thus, Drs. Hafter and Schwartz bear the burden of alleging "the facts essential to show jurisdiction" and supporting those facts with competent proof.   *Precision*, 971 F.2d at 551.  Mere conclusory allegations of jurisdiction are not enough.    *Penteco,* 929 F.2d at 1521.

## III.  Discussion

The provisions of the False Claims Act at issue in this case provide:

(e)  Certain actions barred.

(4)(A)  No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. §§ 3730(e)(4)(A) & (B).  At the summary judgment stage, application of this statutory language involves a four-part inquiry:  (1) whether the alleged "public disclosure" contains allegations or transactions from one of the listed sources; (2) whether the alleged disclosure has been made "public" within the meaning of the False Claims Act; (3) whether the relator's complaint is "based upon" this public disclosure;  and, if so, (4) whether the relator qualifies as an "original source."   *MK-Ferguson* , 99 F.3d at 1544.  A court should address the first three public disclosure issues first.     *Id.*   Consideration of the fourth, "original source" issue is necessary only if the court answers the first three questions in the affirmative.  *Id.*

Here, Drs. Hafter and Schwartz concede the answer to the first three questions is "yes" because their complaint is based upon allegations disclosed in

the Mallory civil suit. [6] Accordingly, our inquiry focuses on the fourth issue, whether Drs. Hafter and Schwartz qualify as "original sources" of the information underlying the allegations of their complaint. To qualify as original sources, Appellants must demonstrate: (1) they have "direct and independent knowledge of the information on which the allegations are based," and (2) they "voluntarily provided such information to the government prior to filing suit." *Precision*, 971 F.2d at 553. Because we find Appellants' inability to demonstrate the first element of this test to be determinative, we proceed directly to that issue.

The district court determined "direct" knowledge meant knowledge gained by the relator's own efforts and not acquired from the labors of others and that

---

[6] Appellants, by way of a supplemental filing, seek to retract their concession that public disclosure in this case occurred during the state lawsuit. Their change in position is based on a recent statement made by Representative Berman, a co-sponsor of the 1986 Amendment to the False Claims Act, who expressed his displeasure with previous court rulings that the voluntary disclosure provision under § 3730(e)(4)(A) includes "state" civil proceedings as instances of public disclosure. 145 Cong. Rec. E-1540, 1546 (July 14, 1999) (statement of Rep. Berman). Our reading of § 3730(e)(4)(A), together with other provisions of the False Claims Act, does not convince us this statute's reference to "civil, criminal and administrative hearings" applies only to federal proceedings, and not state proceedings. Given that "contemporaneous remarks of a single legislator who sponsors a bill are not controlling in analyzing legislative history," we cannot give Representative Berman's remarks, thirteen years after passage of the statute in issue, any weight. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 118 (1980).

"independent" meant knowledge not derivative of the information of others. Applying this standard, the court concluded Appellants failed to demonstrate direct and independent knowledge because the information listed in Mr. Spradling's affidavit was "decidedly indirect." Moreover, the court found no evidence Dr. Hafter possessed personal knowledge of Spectrum's billing practices or that he undertook any investigation of them. The court also rejected Appellants' argument they need only show direct and independent knowledge of some elements of the alleged fraud. Instead, the court concluded Appellants had to demonstrate direct and independent knowledge as to all the essential elements of the claim, a showing they failed to make.

Dr. Hafter argues he obtained direct and independent knowledge of Spectrum's fraud through his employment relationship and by his involvement in Spectrum's business practices. Dr. Hafter further states his dual role as medical director and physician provided him greater access and insight to Spectrum's practices than was routinely revealed, and he unwittingly played "an integral part" in the fraudulent transactions alleged in his complaint. He also points to the affidavit of Mr. Spradling as proof that he was the original source of all the public disclosures in the Mallory case. Dr. Schwartz claims to possess direct and independent knowledge of Spectrum's fraud through contract negotiations he

entered into with Spectrum and by serving as a litigation consultant.

We agree with the district court's ultimate conclusion that Appellants failed to make the required showing of direct and independent knowledge. [7] As stated above, Drs. Hafter and Schwartz bear the burden of alleging the facts essential to show jurisdiction. *See Precision Co.,* 971 F.2d at 551. Because Spectrum has challenged jurisdiction, Appellants must show it by a preponderance of the evidence. *See Celli* , 40 F.3d at 327. They may not rely on mere conclusory allegations of jurisdiction but must support the facts showing jurisdiction by competent proof. *See Precision Co.,* 971 F.2d at 551; *see also Trentacosta,* 813 F.2d at 1559 (treating Rule 12(b)(1) motion as one for summary judgment and requiring plaintiff to set forth facts showing a genuine issue of material fact exists). For purposes of this case, the facts essential to show jurisdiction are that Appellants possessed knowledge that was both "direct and independent" and "of

---

[7] Because this issue is dispositive in determining the district court's subject matter jurisdiction, we decline to address the remaining issue raised by Appellants regarding the voluntary disclosure requirement of 31 U.S.C. § 3730(e)(4)(B). Furthermore, because we base our decision on Appellants' failure to adequately allege facts sufficient to show jurisdiction, we find it unnecessary to address Appellants' arguments regarding whether § 3730(e)(4)(B) requires direct and independent knowledge of all or just some of the essential elements of their fraud claims. Having declined to address these issues, we likewise find it unnecessary to address Drs. Hafter and Schwartz's supplemental arguments on Congress' intent, as to these issues, in passing 31 U.S.C. §§ 3730(e)(4)(A) & (B).

-14-

the information on which the allegations are based." 31 U.S.C. § 3730(e)(4)(B). Direct and independent knowledge is knowledge "marked by the absence of an intervening agency ... [and] unmediated by anything but the relator's own labor." *MK-Ferguson Co.*, 99 F.3d at 1547 (quotation marks and citation omitted). The "information on which the allegations are based" means the information underlying or supporting the fraud allegations contained in the plaintiff's *qui tam* complaint. *See* John T. Boese, Civil False Claims & Qui Tam Actions, 4-65 (1999 Supp.). Thus, Drs. Hafter and Schwartz must demonstrate they discovered the information on which the allegations of their Second Amended Complaint are based through their own efforts and not by the labors of others, and that their information was not derivative of the information of others. *See United States ex rel. Fine v. Advanced Sciences, Inc.,* 99 F.3d 1000, 1006-07 (10th Cir. 1996); *MK-Ferguson Co.*, 99 F.3d at 1548. Our review of the record leads us to conclude that Appellants failed to make this showing.

The Second Amended Complaint merely states "Dr. Hafter and Dr. Schwartz ... have direct and independent knowledge of the information upon which this suit is based." This unsupported, conclusory allegation is insufficient to establish jurisdiction. *See Penteco Corp.,* 929 F.2d at 1521. The memorandum in support of Dr. Hafter's response to Spectrum's motion to dismiss is similarly deficient

-15-

because it presents only generalized and conclusory arguments that Dr. Hafter obtained knowledge of "Spectrum's fraud" through his "employment relationship" and his "involvement in Spectrum's business operations." To establish original source status knowledge, a *qui tam* plaintiff must allege specific facts – as opposed to mere conclusions – showing exactly how and when he or she obtained direct and independent knowledge of the fraudulent acts alleged in the complaint and support those allegations with competent proof. Only in this way will the district court be able to adequately identify legitimate *qui tam* actions and weed out parasitic plaintiffs who offer only secondhand information, speculation, background information or collateral research. *See, e.g., MK-Ferguson Co.*, 99 F.3d at 1548 (concluding plaintiff did not qualify as an original source because he neither observed nor discovered the purported fraud); *United States ex rel. Kreindler & Kreindler v. United Tech. Corp.*, 985 F.2d 1148, 1159 (2d Cir.), *cert. denied*, 508 U.S. 973 (1993) (concluding plaintiff who simply performed collateral research and possessed background information which enabled him to understand the significance of publicly disclosed information did not qualify as an original source); *United States ex rel. Aflatooni v. Kitsap Physicians Serv.*, 163 F.3d 516, 526 (9th Cir. 1999) (concluding relator who offered only speculation and conjecture that the defendant committed the alleged fraud did not qualify as an original source). A mere assertion of knowledge, without adequate basis in fact

and unsupported by competent proof is insufficient to establish jurisdiction. *See, e.g., Wenz v. Memery Crystal*, 55 F.3d 1503, 1508-09 (10th Cir. 1995) (concluding district court lacked jurisdiction where plaintiff failed to support conclusory allegations of jurisdiction with particularized facts); *cf. Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999) (noting evidence must be based on more than "mere speculation, conjecture, or surmise" to defeat a motion for summary judgment.)  Thus, Dr. Hafter's equivocal statements that his position gave him "access to information" and "allowed him to understand" Spectrum's business operations, along with Dr. Schwartz's assertion that he entered into contract negotiations with Spectrum and served as a litigation consultant, do not amount to "competent proof" of Appellants' direct and independent knowledge and fail to persuade us jurisdiction under § 3730(e)(4) is appropriate.

Appellants also argue Mr. Spradling's affidavit establishes Dr. Hafter's direct and independent knowledge.  We disagree.  A comparison of the affidavit and the allegations of the Mallory complaint shows that while Dr. Hafter provided some information to Mr. Spradling, that information was relatively minor and insignificant.  *See Precision Co.*, 971 F.2d at 554 (finding the relator's independent information to be "weak, informal and strikingly redundant").  Indeed, considering the detail and scope of the Mallory allegations, it seems

-17-

evident that most of the core information contained in the Mallory complaint came from Mr. Spradling's independent research and investigation and not from Dr. Hafter, notwithstanding Mr. Spradling's conclusory statements to the contrary. Thus, while Dr. Hafter may have provided the initial impetus for Mr. Spradling's investigation, the facts as alleged do not support a conclusion that Dr. Hafter was the "original source" of the public disclosures contained in the Mallory complaint.

Furthermore, Mr. Spradling's affidavit is lacking in specific, particularized fact allegations showing which fraudulent activities Dr. Hafter witnessed, how he witnessed them and when. Instead, much of the information contained in the affidavit attests to Dr. Hafter's possession of background knowledge and his opinions about Spectrum's management techniques. These statements do not satisfy Appellants' burden of establishing direct and independent knowledge of the information underlying the allegations. *See Kreindler & Kreindler*, 985 F.2d at 1159 (denying original source status to plaintiff who possessed some background knowledge, but who was not the source of the core information underlying the *qui tam* complaint). Thus, Mr. Spradling's affidavit fails to persuade us Dr. Hafter possessed direct and independent knowledge sufficient to support the core basis of the allegations contained in the Second Amended Complaint. *See United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d

1149, 1160 (3d Cir. 1991) (concluding relator need not have all relevant information but must possess some substantive information about the particular fraud alleged).

Moreover, a careful review of the fraud allegations contained in Second Amended Complaint further undercuts a finding of "direct and independent knowledge of the information on which the allegations are based." 31 U.S.C. § 3730(e)(4)(B). Drs. Hafter and Schwartz's claims are unlike the typical False Claims Act suit in which the plaintiff alleges a claim submitted by the defendant was "false" because it overcharged the government. Instead, Appellants contend Spectrum's violation of other federal statutes caused a sort of taint which rendered their otherwise valid Medicare, Medicaid and Champus reimbursement claims "false" under the False Claims Act. This theory of liability, often called "implied certification," relies on the assumption that any person submitting a claim to the government impliedly certifies compliance with all relevant federal laws and regulations. If a defendant such as Spectrum submits a claim which implies compliance with laws and regulations it in fact violated, the claim is alleged to be "false" under the False Claims Act. [8] *See* Boese, Civil False Claims & Qui Tam

---

[8] We express no opinion as to the viability of an "implied certification" claim under the False Claims Act.

Actions 2-85 to 2-90 (discussing the implied certification theory); *see also United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902-03 (5th Cir. 1997) (applying a variation of the implied certification theory); *United States ex rel. Joslin v. Community Home Health of Maryland, Inc.*, 984 F. Supp. 374, 384-85 (D. Md. 1997) (rejecting the implied certification theory). Applying this theory to the facts of this case, Appellants argue Spectrum's billing practices violate various sections of the Social Security Act, Anti-Kickback Laws, Health Care Financing Regulations, and mail fraud and racketeering statutes.[9] Despite these knowing violations, Appellants claim Spectrum impliedly (and fraudulently) certified compliance with those laws when it submitted reimbursement claims to the government. As such, Appellants contend Spectrum's submission of those reimbursement claims amounts to submission of false claims in violation of the False Claims Act.

---

[9] Specifically, Appellants allege Spectrum violated federal law by (1) receiving Medicare, Medicaid and/or Champus reimbursement funds even though it is not considered a "provider of services" under the Social Security Act; (2) using "up-coding" to artificially inflate fees in violation of the Social Security Act; (3) keeping a large percentage of reimbursement funds as a illegal remuneration in violation of the Anti-Kickback laws; (4) giving a portion of its reimbursement funds to the Medical Center in violation of Anti-Kickback laws; (5) compensating physicians through an assignment provision which violates the Social Security Act and accompanying regulations; (6) engaging in a pattern of racketeering to obtain reimbursement funds; and (7) using the mails to further its fraudulent scheme.

By employing this reasoning, Appellants' fraud allegations call into question not just Spectrum's submission of Medicare, Medicaid and Champus reimbursement claims, but also Spectrum's compliance with numerous, ancillary federal statutes and regulations. [10] In comparison to these rather extensive allegations, the information Dr. Hafter related to Mr. Spradling is relatively weak and informal. *See Precision Co.*, 971 F.2d 554. Indeed, certain fraudulent activities detailed in the Second Amended Complaint are wholly absent from the affidavit. For example, a major contention of the Second Amended Complaint is that Spectrum gave a percentage of the Medicare, Medicaid and/or Champus reimbursement funds to the Medical Center as an illegal remuneration or kickback in violation of the Anti-Kickback Laws. Nothing in Mr. Spradling's affidavit even addresses the Medical Center's receipt of such funds, let alone Dr. Hafter's direct and independent knowledge of such activities. Not surprisingly, the record shows that evidence of this alleged fraudulent payment first surfaced during discovery in the Mallory case. Such inconsistencies lend credence to Spectrum's argument that Appellants' suit is substantially based on the Mallory complaint and not on any

---

[10] The district court also discussed allegations of fraudulent conduct by Dr. Chepko, the physician who treated Mr. Mallory. However, the Second Amended Complaint contains no mention of Dr. Chepko or Mr. Mallory; and, because our main concern is Appellants' knowledge of the information on which the Second Amended Complaint is based, we find it unnecessary to discuss Appellants' knowledge of Dr. Chepko's conduct.

information uncovered by Drs. Hafter or Schwartz.

In sum, we conclude Drs. Hafter and Schwartz failed to sufficiently allege facts demonstrating direct and independent knowledge of the information on which the allegations of the Second Amended Complaint are based. The district court therefore lacked jurisdiction to hear the case and summary judgment was appropriate. The judgment of the district court is **AFFIRMED**.