**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 7 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA, EX
REL. JOHN A. KING, D.O.,

     Plaintiff-Appellant,

     v.

HILLCREST HEALTH CENTER, INC.,
HARVEY DRAPKIN, D.O.; JOHN B.
HUGHES, D.O.; RICHARD J.
LANGERMAN, SR., D.O.; TOM W.
EWING, D.O.; ANTHONY L. CRUSE,
D.O.; RAYMOND DIETER, D.O.;
MONA MOTZ, D.O.; GLENN L.
SMITH, D.O.; and JOE GOLDSTEIN,
D.O.,

     Defendants-Appellees.

---

UNITED STATES OF AMERICA,

     Amicus Curiae.

No. 00-6158

---

Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. CIV-98-0295-W)

---

David J. Schenck (Weston C. Loegering, H. Esther Cochran of Hughes & Luce, Dallas,
Texas; John C. McMurry, Oklahoma City, Oklahoma; John N. Goodman, Oklahoma City,
Oklahoma; Christopher L. Davis, Dallas, Texas, on the briefs) of Hughes & Luce, Dallas,
Texas, for Plaintiff-Appellant.

Gregory M. Luce (Jesse A. Witten, Kathleen M. Laubenstein of Jones, Day, Reavis & Pogue, Washington, D.C.; A. Scott Johnson, Mary Hanan, Nathan Lockhart of Johnson, Hanan and Heron, P.C., Oklahoma City, Oklahoma; Rick L. Denker of Denker & Butler, PLLC, Oklahoma City, Oklahoma; Randall K. Calvert, Oklahoma City, Oklahoma; John N. Hermes, M. Richard Mullins of McAfee & Taft, Oklahoma City, Oklahoma; Edward Goldman, Oklahoma City, Oklahoma; Hilton H. Walters of Rife & Walters, Oklahoma City, Oklahoma; Kevin Driskill of Driskill & Jones, Oklahoma City, Oklahoma, with him on the brief) of Jones, Day, Reavis & Pogue, Washington, D.C. for Defendants-Appellees.

Douglas Hallward-Driemeier (David W. Ogden, Assistant Attorney General; Daniel G. Webber, Jr., United States Attorney; Douglas N. Letter, Michael E. Robinson, Attorneys, Appellate Staff, Civil Division, Department of Justice, Washington, D.C. with him on the brief) Attorney, Appellate Staff, Civil Division, Department of Justice, Washington, D.C., for Amicus Curiae.

---

Before **BRISCOE**, **MURPHY**, Circuit Judges, and **CROW**,[*] District Judge.

---

**CROW**, District Judge.

---

Relator John A. King, D.O. appeals the dismissal of this *qui tam* action brought under the False Claims Act ("Act"), 31 U.S.C. §§ 3729-3733. The *qui tam* provisions of the Act permit private individuals to sue on behalf of the United States those persons or entities who allegedly have presented false or fraudulent claims to the federal government.[1] As one of its jurisdictional hurdles, the Act prohibits suits based on

---

[*]    Honorable Sam A. Crow, District Judge, United States District Court for the District of Kansas, sitting by designation.

[1]    Under the Act, a successful relator shares in the recovery whether or not the government intervenes. 31 U.S.C. § 3730(d)(1).

publicly disclosed information unless the relator or person suing is an "original source" of the information. 31 U.S.C. § 3730(e)(4)(A). The principal issue presented is whether the relator Dr. King qualifies as an "original source" under § 3730(e)(4)(B). Agreeing with the district court's determination that the plaintiff cannot show he meets the requirements for an original source, we affirm the district court's judgment dismissing this action for lack of subject matter jurisdiction.

## I. BACKGROUND

As part of his residency training program at Oklahoma State University College of Osteopathic Medicine, Dr. King was employed as a resident physician in orthopedic surgery at the defendant Hillcrest Health Center, Inc. ("Hillcrest") from May of 1993 until his termination in March of 1995. In March of 1997, Dr. King filed a federal action, *King v. Hillcrest Health Center, et al.*, No. 97-0401-T ("*King I*"), asserting claims for relief under federal civil rights statutes and state law. He alleged in part that he was terminated in retaliation for reporting that the defendants were committing Medicare and/or Medicaid fraud. The parties to *King I* settled that suit in January 1999, and it was dismissed with prejudice in February of 1999.

While *King I* was pending, Dr. King filed this *qui tam* action under seal on February 27, 1998, alleging that the defendants had conspired to submit and had submitted false or fraudulent claims for medical services and procedures billed under Medicare and/or Medicaid. The United States declined to intervene, and the district court

in June of 1999 ordered the complaint unsealed and served. The defendants moved to dismiss the plaintiff's first amended complaint arguing, *inter alia*: (1) that the district court lacked subject matter jurisdiction because *King I* constituted a public disclosure of information and Dr. King did not qualify as an "original source" of the information, and (2) that the dismissal with prejudice of *King I* bars this action under the doctrine of *res judicata*. Besides opposing the defendants' motions, the plaintiff moved for leave to file a second amended complaint.

A. District Court's Order Dismissing on *Res Judicata* Grounds

Considering first the challenge to its subject matter jurisdiction, the district court found the proposed second amended complaint to have sufficiently alleged that Dr. King had direct and independent knowledge of the defendants' fraudulent schemes and had gained this knowledge from his own efforts and personal observations. A plaintiff claiming to be an "original source" also must allege that he voluntarily provided the relevant information to the federal government prior to filing the *qui tam* suit. With respect to this pleading requirement, the district court concluded:

> Because the defendants have not contested King's allegation that he did voluntarily provide the information prior to filing this lawsuit, the Court finds for purposes of Rule 12(b)(6) that King has sufficiently alleged that he is an "original source" of the information and that the Court has subject matter jurisdiction over his claims.

(II Aplt. App. at 324). Turning away the subject matter jurisdiction challenge, the district court granted the motions to dismiss on *res judicata* grounds finding an identity of causes

of action in *King I* and the *qui tam* suit.  The district court also denied Dr. King's motion to amend on futility grounds.

B.  First Rule 59(e) Motion and Amicus Curiae Brief

Dr. King filed a Rule 59(e) motion asking the court to reconsider its *res judicata* analysis.  In response, the United States of America ("United States") filed an *amicus curiae* brief concurring with the relator's position on the *res judicata* issue and notifying the district court "that it has no record of the relator providing any information to the government on which the allegations in the *qui tam* are based at any time prior to February 27, 1998, the date the complaint was filed." (II Aplt. App. at 365-66).  The district court promptly followed up with a brief order saying it had "reviewed" the United States' *amicus curiae* brief and giving the parties an additional eight days "to file responses, if they so choose, to the arguments, authorities and statements contained therein."  (II Aplt. App. at 369).

In the additional time provided by the district court, the defendants filed their response on February 22, 2000, and Dr. King filed none.  The defendants addressed not only the *res judicata* arguments but the government's statement that Dr. King had not provided it with information before filing the *qui tam* complaint.  The defendants pointed out that the district court had been misled by the allegation in Dr. King's proposed second amended complaint that he had provided the government with a statement of all material evidence and information when he filed his original *qui tam* complaint.  While the district

court had characterized and denied their prior "facial attack" on subject matter jurisdiction, the defendants maintained the government's filing suggested facts showing the lack of subject matter jurisdiction. The defendants called on the court to consider the government's brief in dismissing this action pursuant to Fed. R. Civ. P. 12(h)(3). Prior to the district court's second dismissal order filed seven days later, Dr. King did not seek leave to file a reply or supplemental brief.

C. District Court's Second Dismissal Order

On February 29, 2000, the district court vacated its prior order of dismissal on res judicata grounds and dismissed the action for lack of subject matter jurisdiction. The district court held:

> The defendants contested only the timeliness of King's disclosure of information to the government in connection with King I. The defendants did not contest the timeliness of the disclosure vis-a-vis the qui tam action, and the Court found King had sufficiently alleged for purposes of the pending Motions to Dismiss that he was an "original source" of the information, and that the Court therefore had subject matter jurisdiction over his claims.
> The United States has now advised the Court and opposing counsel in its amicus curiae brief that it has no record of King providing any information about the allegations giving rise to this lawsuit prior to February 27, 1998, the date the original complaint was filed. In light of the government's clarification about King's actions, the Court concludes that reconsideration of its Order is necessary to the extent the Court now finds King did not provide the information on which the allegations in the *qui tam* action are based prior to filing the FCA action. King therefore does not qualify as an "original source," and, consequently, this action is barred. *E.g., Spectrum*, 190 F.3d at 1157 (FCA specifically bars all *qui tam* actions based on publicly disclosed information unless person bringing action was "original source" of information).

(II Aplt. App. at 387-88). Relying on Fed. R. Civ. P. 12(h)(3), the district court based its

jurisdictional ruling on the suggested facts stated in the government's *amicus curiae* brief rather than the allegation appearing in Dr. King's proposed second amended complaint or the statement in Dr. King's memorandum of law filed on November 4, 1999, that he had "provided detailed information organized in notebooks to the U.S. Attorney in Oklahoma City and to the Department of Justice prior to filing this action." (II Aplt. App. at 387).

### D.  Dr. King's Second Rule 59(e) Motion

In his second Rule 59(e) motion, Dr. King argued he had satisfied the voluntary disclosure element of the "original source" definition and attached an affidavit from his attorney Weston Loegering outlining their efforts to make this pre-filing disclosure. Specifically, Mr. Loegering averred that he met with three assistant United States attorneys in November of 1997, shared some information and allegations from his client, and offered to make his client available for an interview.  Following up on questions asked of him during that meeting, Mr. Loegering provided additional information by telephone calls and voice-mail to the assistant United States attorneys.

The government filed a response with supporting affidavits acknowledging that a meeting with Mr. Loegering did take place in November of 1997 but with only general information disclosed and the names withheld.  According to the government's attorneys, Mr. Loegering provided information of several schemes but withheld the names of his client and of the potential defendants, and he claimed to have documentation and a draft complaint but submitted neither to them.  In her affidavit, Assistant U.S. Attorney Susan

Dickerson Cox averred that she had attended this meeting in November of 1997 but that Mr. Loegering established a framework to keep the meeting "general in nature, on a no-name basis" with "an actual proffer" to be furnished later. (II Aplt. App. at 424). The affidavit highlighted that Mr. Loegering never disclosed "the identity or name of any of the people or entities involved." *Id.* "Neither the identity of the Relator, nor that of the defendants, nor a proffer, nor documentation of any scheme, nor a draft Complaint was provided to this Affiant prior to filing the Complaint." *Id.* The relator filed a reply brief that did not address the government's response or the affidavit of Cox.

The district court observed that in his second Rule 59 motion Dr. King had "challenged the government's allegations regarding the timeliness and extent of his disclosure." (II Aplt. App. at 461). Referring to "the record in its entirety," the district court summarily denied Dr. King's motion as requesting relief "not warranted." *Id.*

The relator appeals arguing: (1) that a public disclosure did not occur and that the district court erred in apparently assuming a public disclosure had occurred; (2) that he fulfilled the letter and intent of the voluntary, pre-filing disclosure requirement of § 3730(e)(4)(B); and (3) that the district court failed to follow proper summary judgment procedure.

## II. STANDARD OF REVIEW

Dismissal for lack of subject matter jurisdiction is reviewed *de novo*, applying the same standard used by the district court. *Sac & Fox Nation of Okla. v. Cuomo*, 193 F.3d

1162, 1165 (10th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). Jurisdictional challenges based on the public disclosure bar "arise out of the same statute creating the cause of action (*i.e.*, the False Claims Act) and are thus necessarily intertwined with the merits of the case." *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1159 (10th Cir. 1999). Consequently, the court should resolve this issue under either Rule 12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure. *Id.*

When it denied initially the defendants' jurisdictional challenge, the district court relied on Rule 12(b)(6) judging only the sufficiency of Dr. King's allegations that the defendants had attacked facially but not factually. When it later sustained the defendants' jurisdictional challenge under Rule 12(h)(3), the district court relied on facts suggested in the government's *amicus curiae* brief and eventually considered affidavits submitted by the government and the relator. Applying the legal standards of Rule 56, the court will review *de novo* the district court's dismissal for lack of subject matter jurisdiction. *See United States ex rel. Fine v. MK-Ferguson Co.*, 99 F.3d 1538, 1543 (10th Cir. 1996).

Having limited jurisdiction, federal courts do not presume jurisdiction to exist but require an adequate showing of jurisdiction from the party invoking it. *Hafter*, 190 F.3d at 1160. Upon a jurisdictional challenge, that party bears the burden of alleging the facts critical to jurisdiction and coming forth with competent proof. *Id.* The premise of limited jurisdiction also means the Act "should not be read in a manner that impermissibly expands federal jurisdiction." *MK-Ferguson*, 99 F.3d at 1544 (citation omitted).

## III. DISCUSSION

The Act denies a court of jurisdiction over a *qui tam* action "based upon the public disclosure of allegations or transactions in a . . . civil, . . . hearing, . . ., unless. . . the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A). The Act defines "original source" to mean "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B). "The FCA's jurisdictional scheme seeks 'the golden mean between adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of opportunistic plaintiffs who have no significant information to contribute of their own.'" *United States ex rel. Fine v. Sandia Corp.*, 70 F.3d 568, 571 (10th Cir. 1995) (quoting *United States ex rel. Springfield Terminal Ry. v.* Quinn, 14 F.3d 645, 649 (D.C. Cir. 1994)); *see United States v. Bank of Farmington*, 166 F.3d 853, 858 (7th Cir. 1999).

At the summary judgment stage, this public disclosure bar to jurisdiction entails four questions:

> (1) whether the alleged "public disclosure" contains allegations or transactions from one of the listed sources; (2) whether the alleged disclosure has been made "public" within the meaning of the False Claims Act; (3) whether the relator's complaint is "based upon" this public disclosure; and, if so, (4) whether the relator qualifies as an "original source."

*Hafter*, 190 F.3d at 1161 (quoting *MK-Ferguson* Co., 99 F.3d at 1544 (10th Cir. 1996)).

-10-

A court's decision should begin with the first three issues governing public disclosure, as the "'original source' issue is necessary only if the court answers the first three questions in the affirmative." *Id.*

## A. Public Disclosure

On appeal, Dr. King contests whether *King I* is a public disclosure and whether the *qui tam* action is based upon the public disclosure. Before the district court, Dr. King essentially conceded both issues when he jumped past these issues and argued only that he qualified as an original source in opposing the defendants' original motions to dismiss.[2] For that matter, Dr. King waited until his reply brief in support of his second Rule 59 motion to complain of the district court's failure to make an express finding that *King I* was a public disclosure. Grounds or arguments in support of subject matter jurisdiction may be waived like any other contention. *Franklin Savings Corp. v. United States*, 180 F.3d 1124, 1129 (10th Cir.), *cert. denied*, 528 U.S. 964 (1999). Even assuming that one or all of these issues had been timely raised before the district court, Dr. King still faces the holding in *United States ex rel. Precision Co. v. Koch Industries, Inc.,* 971 F.2d 548, 552-54 (10th Cir. 1992), *cert. denied*, 507 U.S. 951 (1993), that a *qui*

---

[2]    The relator did cite in a footnote several federal district court opinions from jurisdictions outside the Tenth Circuit as holding that the public disclosure bar did not apply to information disclosed in prior litigation. (II Aplt. App. at 246). The relator, however, ended his footnote with a citation of *But see United States ex rel. Precision Co. v. Koch Industries, Inc.*, 971 F.2d 548, 553-54 (10th Cir. 1992), *cert. denied*, 507 U.S. 951 (1993). Other than citing these cases, the relator made no effort to distinguish the *Precision* decision or to argue that it was not controlling here.

*tam* action is based on a public disclosure when its allegations share a substantial identity with the allegations in prior litigation. Absent an en banc rehearing, we are bound to follow *Precision* here. *Eberl's Claim Service, Inc. v. C.I.R.*, 249 F.3d 994, 1003 (10th Cir. 2001); *United States v. Meyers*, 200 F.3d 715, 720 (10th Cir. 2000) ("The precedent of prior panels which this court must follow includes not only the very narrow holdings of those prior cases, but also the reasoning underlying those holdings, particularly when such reasoning articulates a point of law"). Being no dispute that a substantial identity exists, *King I* is a public disclosure under § 3730(e)(4)(A) that bars jurisdiction of the *qui tam* action unless Dr. King qualifies as an original source.

### B. Original Source

Dr. King contends he satisfied the requirements for being an original source. Not only did he have direct and independent knowledge of the information on which the allegations are based, but his attorney met and discussed those allegations with assistant United States attorneys before ever filing the *qui tam* suit. Dr. King insists the voluntary pre-filing disclosure by his attorney, though conducted on a no-name basis, should be held sufficient in that it conveyed the substance of his fraud allegations.

The two jurisdictional elements in the "original source" exception at § 3730(e)(4)(B) are:

> First, the *qui tam* relator must have "direct and independent knowledge of the information on which the allegations are based." *Precision*, 971 F.3d at 553. Second, the *qui tam* relator must have "voluntarily provided" the information to the government prior to filing suit. *Id.*

-12-

*MK-Ferguson*, 99 F.3d at 1547. In other words, the relator must not only be the "source," that is, one who voluntarily provides the information to the government before filing an action, but the relator must also be the "original source," that is, one who has direct and independent knowledge of the information on which the allegations are based. *United States v. Bank of Farmington*, 166 F.3d at 865. To avoid the jurisdictional bar created by "public disclosure," a relator must have direct and independent knowledge of the information on which the *qui tam* allegations are based and must have provided the same information to the government prior to filing the *qui tam* action. It is the "source" element that is the focus of this appeal.

The statute does not lay out and the courts have not settled on what it means to have "voluntarily provided the information to the Government before filing an action." § 3730(E)(4)(B); *see Bank of Farmington*, 166 F.3d at 865. The language of a statute is ordinarily conclusive absent a clearly expressed legislative intent to the contrary, and the plain meaning of that language generally controls unless this results in ambiguity or absurdity. *United States ex rel. Precision Co. v. Koch Industries, Inc.*, 971 F.3d at 552. "Not only are we governed by the plain language of the statute, we must also be mindful that 'statutes conferring jurisdiction on federal courts are to be strictly construed , and doubts resolved against federal jurisdiction.'" *Id*. (quoting *F & S Construction Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964)).

Subparagraph (B) is a single sentence. It refers to "information" as that "on which

the allegations are based." Specifically, "[t]he 'information on which the allegations are based' means the information underlying or supporting the fraud allegations contained in the plaintiff's *qui tam* complaint." *Hafter*, 190 F.3d at 1162 (citation omitted). "The word 'information' refers to *any* essential element of the fraud transaction (*e.g.*, Y).'" *United States ex rel. Findley v. FPC-Boron Employees'* Club, 105 F.3d 675, 690 (D.C. Cir.) (quoting *Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 657 (D.C. Cir. 1994)), *cert. denied*, 522 U.S. 865 (1997); *see also Sandia Corp.*, 70 F.3d at 572. Thus, before filing the *qui tam* action, a relator must voluntarily provide the Government with the essential elements or information on which the *qui tam* allegations are based.

It is also clear from the statutes that compliance with the disclosure requirements of § 3730(b)(2) at the time of filing does not satisfy the pre-filing disclosure requirement of § 3730(e)(4). *Farmington* , 166 F.3d at 866; *Findley*, 105 F.3d at 690. "More must be done to qualify as an original source than to file the action. The government must be voluntarily notified beforehand." *Farmington*, 166 F.3d at 866 (citation omitted). The pre-filing voluntary disclosure requirement encourages private individuals to come forward with their information of fraud "at the earliest possible time and . . . discourage[s] persons with relevant information from remaining silent." *Farmington*, 166 F.3d at 866 (quotation and citations omitted). Besides giving the government more time than the post-filing period to act on the fraud allegations, this requirement also gives the government the chance "to consider whether there has already been public disclosure of

-14-

the matters, whether the prospective relator in fact possesses direct and independent knowledge of the matters he is disclosing, and whether he is making disclosure on a voluntary basis." *United States ex rel. Ackley v. Intern. Business Machines*, 76 F. Supp. 2d 654, 668 (D. Md. 1999).

The narrow question raised on appeal is whether a relator qualifies as a "source" if in making his pre-filing disclosure he withholds his identity and the identities of the potential defendants. The identities of the accuser and the accused are information, *i.e.* essential elements of the fraud transaction, on which the *qui tam* allegations are based. As for the information about the fraudulent schemes that was disclosed, there is little question that the government's ability to analyze and assess it was hampered, if not blocked, by this omission of identities. To withhold the identities of the relator and perpetrator deprives the government of key facts necessary in its efforts to confirm, substantiate or evaluate the fraud allegations. Without the identities, the information behind the allegations essentially remains in the relator's possession and undisclosed to the government, and what has been disclosed could be said to be little more than a hypothetical account given by an attorney.

That the relator's attorney offered to make his client available for an interview or that the government could have discovered the defrauding entities upon investigation must be rejected as efforts to dilute the very jurisdictional requirements set by Congress. Section 3730(e)(4) requires an individual to provide voluntarily the information to the

government before filing the *qui tam* action. Plainly, the statute imposes the responsibility on the relator to meet these requirements in order to qualify as an "original source" and, other than the implied obligation of being available to accept such disclosures, places no additional investigative duties on the government to assist a relator in meeting this jurisdictional requirement. Applying these jurisdictional requirements in this manner encourages private individuals to come forward quickly with their information, to not dawdle when there has been a public disclosure, and to discourage persons from withholding or remaining silent about their relevant information. *See Farmington*, 166 F.3d at 866. In sum, the relator's decision to withhold from his voluntary disclosure to the government, his identity and that of the potential defendants, kept him from meeting the jurisdictional requirements of an original source.[3]

## C. Summary Judgment Procedure

Though acknowledging that a court may dismiss *sua sponte* for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3) ("[w]henever it appears by suggestion of

---

[3] Citing decisions from the Sixth and D.C. Circuits, the appellees ask the court to read § 3730(e)(4)(B) as requiring a relator to make the voluntary disclosure to the government not just "before filing" the *qui tam* action but before the public disclosure. The Tenth Circuit has discussed the voluntary disclosure element as something to be accomplished "prior to filing suit." *See, e.g., United States ex rel. Fine v. MK-Ferguson Co.*, 99 F.3d 1538, 1547 (10th Cir. 1996); *United States ex rel. Fine v. Advanced Sciences, Inc.,* 99 F.3d 1000, 1006 (10th Cir. 1996). Having concluded that Dr. King failed to make an adequate voluntary disclosure prior to filing suit, the court need not consider this issue regarding the timing of the disclosure. For the same reason, the court will not tackle the appellees' alternative arguments for affirming the district court's judgment.

the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action"), Dr. King relies on notions of "fairness and common sense" in arguing he was denied effective notice of the voluntary pre-filing disclosure issue and the timely opportunity to present evidence on the same. As the appellees point out, a district court is vested with discretion to set procedures for determining subject matter jurisdiction. *United States ex rel. Precision Co. v. Koch Industries, Inc.*, 971 F.2d at 551 n. 1 ("Because there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court." (quotation omitted)). Relying on the post-judgment "suggestion" in the *amicus curiae* brief that subject matter jurisdiction may be lacking, the district court invited responses from the relator and the defendants. This court agrees that the district court's invitation certainly could have been more specific about the issues to be briefed. For that matter, the district court should have set out a procedure for briefing this issue and submitting evidence on the same.

The district court's failure to set and follow a procedure, however, did not prejudice Dr. King so as to require reversal. Because the defendants had earlier challenged the court's jurisdiction due to public disclosure, Dr. King "had an opportunity to sufficiently plead their original source status" in the proposed second amended complaint and attach the proof necessary to support those allegations. *Hafter*, 190 F.3d at 1160 n. 5. The district court then gave Dr. King the additional opportunity to respond to the government's brief that included this Rule 12(h)(3) suggestion. More importantly,

because he undisputedly withheld identities from his voluntary disclosure, Dr. King is unable to argue that the lack of notice and opportunity to present evidence precluded him from proving that the requirements for an original source were satisfied. Thus, even assuming the district court did err in not setting and following established procedures and in not granting the Rule 59(e) motion and conducting an evidentiary hearing, Dr. King's attorney's affidavit would not sustain a finding that the relator had made an adequate pre-filing disclosure.

## IV. CONCLUSION

In sum, we conclude that *King I* was a public disclosure under § 3730(e)(4)(A) and that Dr. King is unable to prove he made the voluntary pre-filing disclosure required under § 3730(e)(4)(B). The district court's order dismissing this action for lack of subject matter jurisdiction is affirmed.