**F I L E D**

**UNITED STATES COURT OF APPEALS**

**July 19, 2005**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA ex
rel. WILL and COURTNEY
MORTON,

     Plaintiffs-Appellants,

v.

A PLUS BENEFITS, INC. and
EVEREST ADMINISTRATORS,

     Defendants-Appellees.

No. 04-4148
(D.C. No. 2:03-CV-711-DS)
(D. Utah)

**ORDER AND JUDGMENT** *

Before **KELLY** , **BRISCOE** , and **LUCERO** , Circuit Judges.

Relators Will and Courtney Morton appeal the dismissal of a <u>qui</u> <u>tam</u> action

brought by them against A Plus Benefits, an ERISA Plan administrator, and

Everest Administrators, the contract administrator for the Plan, under the False

Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733. FCA <u>qui</u> <u>tam</u> provisions "permit

private individuals to sue on behalf of the United States those persons or entities

---

    * This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

who allegedly have caused false or fraudulent claims to be presented to the federal government." United States ex rel. King v. Hillcrest Health Center, Inc., 264 F.3d 1271, 1275 (10th Cir. 2001). In their complaint, the Mortons allege that defendants' improper denial of medical insurance coverage for their premature infant, and defendants' "direction" to file the medical claim with Medicaid, constituted Medicaid fraud. The district court dismissed the Mortons' complaint under Fed. R. Civ. P. 12(b)(6), concluding that they had failed to assert a claim under the FCA because they failed to allege a false or fraudulent claim. We **AFFIRM**.

## I

Specifically, the Mortons pleaded in their complaint that A Plus and Everest unreasonably denied health benefits for medical treatment provided to their son, Mitchell Morton ("Mitchell"), which resulted in the Utah State Medicaid program's payment of these expenses. Plaintiffs contend that Mitchell's medical expenses should have been paid under the terms of the ERISA employee welfare benefit plan ("the Plan") sponsored by A Plus Benefits,[1] and that by denying Mitchell's claims, defendants fraudulently shifted the cost of his care to the taxpayers. The Mortons contend that the reasons given by defendants for

---

[1] A contemporaneous ERISA lawsuit was filed by the Mortons in district court.

2

denying Mitchell's claims, which arise from Mitchell's premature birth and subsequent extensive medical treatment, were unreasonable to a degree that, when combined with what they contend was a "direction" to file the claims with Medicaid, the statements constitute a violation of the FCA.

Although the Plan paid for two months of medical treatment following Mitchell's birth, it denied further coverage on the basis that the subsequent care was "custodial" and not covered by the Plan. In the letter notifying the health care providers of the Plan's determination on further payment, Everest, acting as the Plan's claims administrator provided the following information, which the Mortons contend is a "direction" to file the claims for Mitchell's medical care with Medicaid:

> It is this Plan's preliminary determination, based on the information available to the Plan, that Mitchell Morton's care after May 31, 2001, is custodial, and therefore not covered by this Plan . . . . If the information is not already in your files, Mitchell Morton's Medicaid ID is [number] and his case manager is Cherie Morgan . . . . Due to an inquiry to the Plan from the Utah State Medicaid office, Ms. Morgan is already aware of this Plan's preliminary determination in this case.

(Appellants' App. at 14). Payment by Medicaid would not have been necessary or available but for the denial of coverage by the Plan.

## II

We review de novo a district court's dismissal under Rule 12(b)(6). Adams v. Kinder-Morgan, Inc., 340 F.3d 1083, 1092 (10th Cir. 2003). Such "dismissal is

3

inappropriate unless plaintiff can prove no set of facts in support of his claims that would entitle him to relief." Dill v. City of Edmond, 155 F.3d 1193, 1201 (10th Cir. 1998). A court's function on a Rule 12(b)(6) motion "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Proctor & Gamble Co. v. Haugen, 222 F.3d 1262, 1278-79 (10th Cir. 2000). When we review a dismissal under 12(b)(6) we must "accept all the factual allegations in the complaint as true," Leonhardt, 160 F.3d at 634, and construe them in the light most favorable to the plaintiff. See Aguilera v. Kirkpatrick, 241 F.3d 1286, 1292 (10th Cir. 2001).

Applicable sections of the False Claims Act state:

(a) Liability for certain acts. – Any person who –
 (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval; [or]
 (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; [or]
 (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid . . .
is liable to the United States Government for a civil penalty of not less than $5000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person . . . ."

31 U.S.C. § 3729(a)(1)-(3).

In their complaint, the Mortons allege violations under all three subsections

4

of § 3729(a). First, under § 3729(a)(1), relators allege that the defendants' false statement – "that Mitchell's medical expenses were not covered under the terms of the Plan" – resulted in the illegal shifting of Mitchell's medical expenses from the Plan to Medicaid. Second, relators, under § 3729(a)(2), allege that defendants knowingly made the same false statement to Medicaid, the relators, and Mitchell's health care providers "to get a false or fraudulent claim paid or approved by Medicaid." Third, under § 3729(a)(3), relators allege that the defendants conspired to defraud the United States "by getting false or fraudulent claims allowed or paid and by establishing and executing an illegal payment scheme to the damage of the United States." In dismissing the complaint with prejudice, the district court ruled that "there is no false or fraudulent claim involved," and that because Everest was a disclosed agent of A Plus Benefits, as a matter of law, Everest was not responsible for the conduct of its principal.

On appeal, the Mortons contend that their allegations were sufficient to survive a motion to dismiss because they can prove a set of facts that would entitle them to relief under the FCA. We disagree. "At least two elements are necessary to state a claim under these provisions [of the FCA]: (1) a claim for payment from the government, (2) that is false or fraudulent." Boisjoly v. Thiokol, Inc., 706 F.Supp. 795, 808 (D. Utah 1988).

The Mortons fail to allege the falsity required to sustain an FCA claim

5

against either A Plus Benefits or Everest.  "[A] false or fraudulent claim" is a common requirement of all three subsections of § 3729(a).  Thus, if the factual allegations do not support a conclusion that a "false or fraudulent claim" was made, the case may not proceed under the FCA.  The FCA does not define "false" or "fraudulent," but its falsity and scienter requirements are inseparable.  See United States ex rel. Lamers v. City of Green Bay, 168 F.3d 1013, 1018 (7th Cir. 1999); United States ex rel. Roby v. The Boeing Co., 100 F.Supp. 2d 619 (S.D. Ohio 2000).  Falsity under the FCA "does not mean 'scientifically untrue'; it means 'a lie.'"  Wang v. FMC Corp., 975 F.2d 1412, 1421 (9th Cir. 1992).  At a minimum the FCA requires proof of an objective falsehood.  See Lamers, 168 F.3d at 1018; Hagwood v. Sonoma County Water Agency, 81 F.3d 1465, 1477-78 (9th Cir. 1996).  "Expressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false."  Roby, 100 F.Supp. 2d at 625.

A great amount of argument below, and on appeal, centers on defendants' claim that discretionary decisions under an ERISA plan can never constitute the falsity necessary to sustain a claim under the FCA.  Defendants argue that because the determination that Mitchell's care was not covered by the Plan is a discretionary decision, it is not an "objectively verifiable fact," and cannot form the basis for a false or fraudulent claim.  Defendants also argue that the

6

disagreement over the coverage of the Plan is not susceptible of being proved true or false, and as such falls squarely into the general rule that fraud cannot be predicated on a mere expression of opinion. See Tyger Constr. Co., Inc. v. United States, 28 Fed. Cl. 35 (1993). Relators' complaint, however, alleges that the interpretation of the Plan was "transparently bogus," and defendants' invocation of the custodial care exclusion lacked "any reasonable basis," such that defendants' interpretation of the Plan to exclude the type of medical care given to Mitchell as custodial is "false."

We agree that liability under the FCA must be predicated on an objectively verifiable fact. Nonetheless, we are not prepared to conclude that in all instances, merely because the verification of a fact relies upon clinical medical judgments, or involves a decision of coverage under an ERISA plan, the fact cannot form the basis of an FCA claim. In this case, the nature of neither the scientific nor contract determinations inherent in the formation and evaluation of the allegedly "false" statement is susceptible to proof of truth or falsity.

Relators' claim that Mitchell's care was covered by the Plan because the medical care was therapeutic – versus custodial – requires resolution of two sets of inherently ambiguous issues. First, it requires a scientific determination of whether the medical care was custodial or therapeutic, and second, it requires a determination of whether, as a matter of contract interpretation, Mitchell's care

7

fell within the Plan's definition of "custodial" care. Although not all clinical diagnoses and characterizations of medical care are intrinsically ambiguous, the determination of whether the care given to a premature infant is therapeutic is necessarily ambiguous. In this case, the Plan's custodial care exclusion is also ambiguous, requiring determinations of the "primary purpose or result" or if care is given for "non-therapeutic purposes."[2] As in Tyger, the relators' "complaint frames certain allegations as opinions that would follow if the court were to find the underlying facts consistent with [relators'] proof . . . [a]lthough the 'opinion' is an ultimate finding of fact, the pleading is tantamount to [relators'] own opinion." Tyger, 28 Fed. Cl. at 56. Expression of a legal opinion, in this case depending, as it does, on the resolution of two sets of inherently ambiguous

_____

[2] The custodial care exclusion in the Plan defines "custodial care" as: Expenses related in any way to care, regardless of setting, for which a professional license is not required, and is primarily maintenance care required due to the Participant's inability to perform the common activities of daily living. Any care for which the primary result or purpose is to maintain, rather than to improve, the Participant's condition will be considered custodial . . . [and] Services, supplies, or accommodations for care which 1. Does not provide treatment of an illness or injury, or 2. Could be provided by persons with [sic] professional skills or qualifications, or 3. Are provided primarily to assist the person in daily living, or 4. Are for the convenience, contentment, or other non therapeutic purposes, or 5. Maintain physical condition when there is no prospect of effecting remission, or restoration of the patient to a condition where care would not be required. (Appellants' App. at 32-33, 36) (emphasis added)

8

determinations by defendants, cannot form the basis for an FCA claim. See

Lamers, 168 F.3d at 1018 ("[I]mprecise statements or differences in interpretation

growing out of a disputed legal question are similarly not false under the FCA.");

Wang, 975 F.2d at 1421 ("The Act is concerned about ferreting out 'wrongdoing,'

not scientific errors. What is false as a matter of science is not, by that very fact,

wrong as a matter of morals."); Tyger, 28 Fed. Cl. at 56 (noting that FCA liability

will not attach for a statement relating to a contract term that is incapable of a

precise definition, and fraud cannot be predicated on the mere expression of an

opinion). We therefore conclude that the Mortons have failed to allege the

required "false or fraudulent" claim, and as such, dismissal under Fed. R. Civ. P.

12(b)(6) was appropriate.[3] Accordingly, we **AFFIRM**.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge

---

[3] Because we resolve this appeal on this basis we do not address the additional issues of whether the Mortons sufficiently alleged either the conspiracy to defraud in their third claim, or the "presented" or "caused to be presented" elements of their FCA claims.

9