NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3156
_____

UNITED STATES OF AMERICA ex rel. JAMES JUDD, MD;
DISTRICT OF COLUMBIA; CALIFORNIA; CONNECTICUT; COLORADO;
DELAWARE; FLORIDA; GEORGIA; HAWAII; ILLINOIS; INDIANA;
LOUISIANA; MARYLAND; MASSACHUSETTS; MICHIGAN; MINNESOTA;
MONTANA; NEVADA; NEW HAMPSHIRE; NEW JERSEY; NEW MEXICO;
NEW YORK; NORTH CAROLINA; OKLAHOMA; RHODE ISLAND;
TENNESSEE; TEXAS; VIRGINIA; WISCONSIN; CHICAGO CITY;
NEW YORK CITY; PHILADELPHIA CITY, ex rel., JAMES JUDD, M.D.;
JAMES JUDD, M.D., individually

v.

QUEST DIAGNOSTICS INCORPORATED

James Judd, M.D.,

Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 2-10-cv-04914-KM-MAH)
District Judge: Hon. Dickinson R. Debevoise
_____

Argued: March 18, 2015
_____

Before: McKEE, *Chief Judge*, RENDELL and FUENTES, *Circuit Judges*.

(Opinion filed: August 26, 2015)

_____

OPINION[1]

_____

William J. Leonard, Esq.            **[ARGUED]**
Mathieu Shapiro, Esq.
Obermayer, Rebmann, Maxwell & Hippel
One Penn Center
1617 JFK Blvd., 19th Floor
Philadelphia, PA 19103

Kimberly D. Sutton, Esq.
Obermayer, Rebmann, Maxwell & Hippel
200 Lake Drive East
Suite 110, Woodland Falls Corporate Park
Cherry Hill, NJ 08002

    *Counsel for Appellant*

Ethan M. Posner, Esq.            **[ARGUED]**
Matthew J. Berns, Esq.
Michael M. Maya, Esq.
Covington & Burling
One City Center
850 Tenth Street, NW
Washington, DC 20001

    *Counsel for Appellee*

MCKEE, *Circuit Judge.*

Relator-Plaintiff James Judd, M.D. appeals the District Court's order dismissing

the majority of his claims under the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"),

against Defendant Quest Diagnostics Incorporated ("Quest") due to the public disclosure

---

[1] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

bar and Rule 9(b) of the Federal Rules of Civil Procedure. We will affirm.

I.

Judd is a medical doctor who has been the managing partner and chief executive officer of Hatboro Medical Associates, P.C., ("HMA), a Pennsylvania-based group medical practice, since 1988. Quest is a large, Michigan-based diagnostic testing company with a number of laboratories nationwide. In 2010, Judd filed a *qui tam* action under seal that asserted claims under the FCA, as well as multiple state and local false claims acts. Quest moved to dismiss based on the public disclosure bar to FCA actions, 31 U.S.C. § 3730(e)(4) (2006), and Rule 9(b). In response, Judd filed an Amended Complaint asserting additional causes of action.

In his Amended Complaint, Judd alleges that, in 2007, he discovered a "kickback scheme" that Quest had been engaging in with HMA and other healthcare providers throughout Southeast Pennsylvania since "sometime before 2005[.]" (JA 59 ¶ 23.) The purpose of this scheme was allegedly to induce healthcare providers to refer their patients to Quest in return for benefits including medical and office supplies, substance abuse and diagnostic laboratory testing performed by Quest at discounted rates, and free access to Quest's patient database. Judd claims that, as a result of these benefits, the providers did indeed refer lab work to Quest rather than other labs. He further alleges that both Quest and the healthcare providers submitted to Medicaid and Medicare thousands of claims for reimbursement that were false because the underlying procedures were performed using kits, tests, and other supplies that Quest provided free of charge. As a result of the alleged scheme, Judd claims that Quest violated the Anti-Kickback Statute ("AKS"), 42

3

U.S.C. § 1320a-7b, and the Stark Law, 42 U.S.C. § 1395nn, and that any claims that Quest submitted to Medicare and Medicaid during the period of the alleged kickback scheme were false and fraudulent under the FCA.

After Judd filed his Amended Complaint, Quest again moved to dismiss based on Rule 9(b) and the public disclosure bar, arguing that Judd's claims had been publicly disclosed in three cases: (1) *United States ex rel. Urbanek v. Laboratory Corp. of America Holdings, Inc.*, No. 00-4863 (E.D. Pa.) ("*Urbanek*"), filed on September 26, 2000; (2) *United States ex rel. Fair Laboratory Practices Associates v. Quest Diagnostics, Incorporated*, No. 05-5393 (S.D.N.Y.) ("*F.L.P.A.*"), filed on November 18, 2009; and (3) *California ex rel. Hunter Laboratories, LLC v. Quest Diagnostics Incorporated*, No. 34-20009-00048046 (Cal. Super. Ct.) ("*Hunter Labs*"), filed on December 14, 2009. The District Court concluded that the public disclosure bar mandates dismissal of Judd's claims regarding Quest's scheme with providers other than HMA before 2010. *Judd v. Quest Diagnostics Inc.*, Civ. No. 10-4914 (KM), 2014 WL 2435659 at *6-13 (D.N.J. May 30, 2014). In so ruling, the court provided two reasons: First, it found that these claims had been previously publicly disclosed in *Urbanek* and *Hunter Labs*. *Id.* Second, it found that Judd was not an original source of the information on which his allegations about healthcare providers other than HMA were based.[2] *Id.* at *14. Thus, it held that it lacked jurisdiction over these claims. *Id.* In so

---

[2] Having dismissed Judd's federal claims, the District Court also dismissed Judd's state law claims pursuant to 28 U.S.C. § 1367. *Judd*, 2014 WL 2435659 at *14, n.16. Judd does not challenge that decision.

4

ruling, the District Court applied the version of the public disclosure bar in existence prior to the enactment of the Patient Protection and Affordable Care Act ("ACA"), Pub. L. 111-148, 124 Stat. 119. *Id.* at \*4-6. The District Court ruled, however, that the public disclosure bar does not apply to Judd's allegations regarding false claims submitted by HMA and the discounted testing services that Quest provided healthcare providers after 2010 in order to induce patient referrals. *Id.* at \*14. Judd voluntarily dismissed his claims regarding HMA. *Id.* at \*16.

Agreeing with Quest's Rule 9(b) arguments, the District Court dismissed with prejudice all of Judd's claims regarding healthcare providers other than HMA, whether arising before or after 2010, and whether based on his free-supplies theory or his discounted-testing theory, because they failed to satisfy the requirements of Rule 9(b) as provided in *United States ex rel. Foglia v. Renal Mgmt. Ventures, LLC*, 754 F.3d 153 (3d Cir. 2014). *Judd*, 2014 WL 2435659 at \*14-17. This appeal followed.

II.

We exercise plenary review of the District Court's grant of the motion to dismiss the complaint for lack of jurisdiction due to the FCA's public disclosure bar. *See, e.g.*, *United States ex rel. Zizic v. Q2 Administrators, LLC*, 728 F.3d 228, 234 (3d Cir. 2013). We also exercise plenary review of the District Court's dismissal of the Amended Complaint for failure to state a claim. *See, e.g.*, *United States ex rel. Foglia*, 754 F.3d at 154 n.1.

III.

The FCA's public disclosure bar "deprives courts of jurisdiction over *qui tam* suits when the relevant information has already entered the public domain through certain channels." *Graham Cnty Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 285 (2010). This is true both before and after the ACA amended the FCA. The pre-ACA public disclosure bar mandated dismissal based on public disclosures at the local, state, and federal level, while the ACA-amended version requires dismissal only where disclosures are made in federal proceedings and sources. *Compare* 31 U.S.C. § 3730(e)(4)(A) (2006) *with* 31 U.S.C. § 3730(e)(4)(A) (2010). In dismissing Judd's claims regarding Quest's dealings with non-HMA healthcare providers, the District Court correctly held that before the FCA was amended, "the critical inquiry is what the law was at the time the alleged conduct in the complaint took place." *Judd*, 2014 WL 2435659 at *6.

As the Supreme Court noted in *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 945-46 (1997), "there is a presumption against retroactive legislation that is deeply rooted in our jurisprudence" that is applied "unless Congress had clearly manifested its intent to the contrary," and "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place. . . ." This presumption against retroactivity is even stronger where an amendment eliminates a defense to a *qui tam* suit. *Id.* at 947 (Noting that amendment in question "eliminate[d] a defense to a *qui tam* suit – prior disclosure to the Government – and therefore changes the substance of the existing cause of action for *qui tam* defendants by attaching a new disability, in respect to transactions or considerations already past.")

6

Here, it is clear that the public disclosure bar as amended by the ACA would eliminate a full defense that Quest would otherwise have to Judd's *qui tam* action: prior disclosure in a state court. There is no indication, however, that Congress intended to make the amendments to the public disclosure bar retroactive. *See Graham*, 599 U.S. at 283 n.1 (Explaining that the ACA amendments to the public disclosure bar "make[] no mention of retroactivity, which would be necessary for its application to pending cases given that it eliminates [*qui tam* defendants'] claimed defense to a *qui tam* suit.")

Indeed, neither of the cases that Judd cites convinces us that the ACA-amended public disclosure bar must apply to *qui tam* claims filed after the ACA's effective date. In *United States ex rel. Estate of Robert Cunningham v. Millennium Laboratories of California, Inc.*, 841 F. Supp. 2d 523, 524-27 (D. Mass. 2012), *aff'd in part and rev'd in part on other grounds*, 713 F.3d 662 (1st Cir. 2013), there was no issue about which version of the public disclosure bar to apply because the pre-ACA public disclosure bar was in effect when the initial complaint was filed and when the conduct alleged in the complaint occurred.[3] Although *United States ex rel. Booker v. Pfizer, Inc.*, 9 F. Supp. 3d 34 (D. Mass. 2014), does support Judd's assertions, it is not persuasive. In a footnote, the District Court there suggested that the ACA-amended public disclosure bar should apply despite the fact that most of the conduct at issue preceded the effective date of the ACA.

---

[3] In addition, although an amended complaint was filed in the case after the enactment of the ACA, the District Court maintained that the pre-ACA public disclosure bar was the appropriate version to apply because of the "well-established principle that jurisdiction is determined based on whether it existed at the time of the original complaint." *Cunningham*, 841 F. Supp. 2d. at 527.

7

*Id.* at 44 n.3.   That court ignored the Supreme Court's holding in *Hughes Aircraft*, however.

We also find no error in the District Court's conclusion that the complaints in *Urbanek* and *Hunter Labs* publicly disclosed Judd's claims regarding Quest's dealings with non-HMA healthcare providers.  *Judd*, 2014 WL 2435659 at *7-10.  To determine whether the pre-ACA public disclosure bar mandates dismissal of Judd's claims, the court "must first assess whether the relator's claim is based on publicly disclosed allegations or transactions."  *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 519 (3d Cir. 2007).  "This, in turn, requires a twofold analysis.  First, [the court must] determine whether the information was disclosed via one of the sources listed in § 3730(a)(4)(A).  Second, [the court must] decide whether the relator's complaint is based upon those disclosures."  *Id*.  The parties do not dispute that the pleadings in *Urbanek* and *Hunter Labs* qualify as public disclosures under the public disclosure bar in both its pre-ACA and ACA-amended forms.

It is clear that Judd's principal claim that Quest distributed free supplies to physicians in order to induce them to refer patients to Quest for diagnostic laboratory testing is "based upon" the disclosures in *Urbanek*.  That is readily apparent from the District Court's recitation of the pleadings.  *Judd*, 2014 WL 2435659 at *7-8.  Indeed, the relators in *Urbanek* alleged, as Judd does, that Quest violated the Anti-Kickback Act by providing healthcare providers with medical supplies, (*compare* JA 77-78 ¶ 111 *with* JA 141 ¶ 30), and office supplies, (*compare* JA 75 ¶¶ 105-06 *with* JA 141 ¶ 30), in return for patient referrals, (*compare* JA 59 ¶ 25, JA ¶ 107, and JA 79 ¶ 117 *with* JA 141 ¶ 29, JA

8

142 ¶ 32, and JA 181 ¶ 93). Judd's secondary claim is that this conduct violated the FCA because physicians submitted fraudulent claims that included the cost of those supplies. (JA 84 ¶ 132.) This claim was also made in *Urbanek*. (JA 150 ¶ 72-73, JA 179 ¶ 82, and JA 180 ¶ 88.) The minor variations between Judd's Amended Complaint and the *Urbanek* pleadings do not place Judd's claims beyond the scope of the public disclosure bar. *See United States ex rel. Zizic*, 728 F.3d at 238 (explaining that identification of specific employee allegedly involved in fraud did not prevent finding that allegations were disclosed in prior litigation that did not name employee); *United States ex rel. Boothe v. Sun Healthcare Grp., Inc.*, 496 F.3d 1169, 1174 (10th Cir. 2007) ("Not a single circuit has held that a *complete* identity of allegations, even as to time, place and manner, is required to implicate the public disclosure bar[.]") (emphasis in original).

It is also clear that the disclosures in *Hunter Labs* inform those in Judd's Complaint regarding discounted testing services before 2010.[4] Judd argues that the District Court erred in so finding because the allegations in *Hunter Labs* focused on Quest's actions with respect to California and individual doctors, while his allegations focus on federal programs and groups of doctors. These are distinctions without a difference. The mechanism of the fraud alleged in both *Hunter Labs* and the instant case are the same: that Quest provided discounts to medical providers in order to induce

---

[4] The District Court noted that the *Hunter Labs* case had "no effect on conduct alleged in [Judd's] Amended Complaint that took place in 2010 or later relating to Quest providing discounted testing services, because . . . substantially similar allegations in state fora do not qualify as a public disclosure under the ACA-amended public disclosure bar. *See* 31 U.S.C. § 3730(e)(4)(A) (2010)." *Judd*, 2014 WL 2435659 at *10 n.10.

9

referrals and that those discounts allowed the medical providers to increase profits by pocketing the difference between the amounts that they paid to Quest and the amounts they charged others, whether privately paying patients, or a state government, or the federal government. As we have explained, the public disclosure bar covers actions "even partly based upon" previously disclosed allegations or transactions. *See United States ex rel. Zizic*, 728 F.3d at 238. The District Court ruling was correct.

Because Judd's fraud allegations regarding Quest's alleged scheme with non-HMA healthcare providers prior to 2010 were publicly disclosed in *Urbanek* and *Hunter Labs*, the District Court had jurisdiction of these claims only if Judd could show that he was an "original source" of his allegations. 31 U.S.C. § 3730(e)(4)(B).[5] Under the pre-ACA public disclosure bar, an "original source" is "an individual who has direct and independent knowledge of the information on which the allegations are based . . . ." *Id.*[6] Under the "independent knowledge" prong of the original source test, "the relator must possess substantive information about the particular fraud, rather than merely background information which enables a putative relator to understand the significance of a publicly disclosed transaction or allegation." *United States ex rel. Stinson, Lyons, Gerlin &*

---

[5] As we noted above, the District Court found that Judd was an original source of his allegations regarding Quest's alleged fraudulent scheme with HMA. *Judd*, 2014 WL 2435659 at *10-13. Thus, the District Court held that "Judd may pursue his federal FCA claims . . . as they relate to HMA's submissions of false claims." *Id*. at *17. Those claims are not at issue, however, because Judd later dismissed them.

[6] The pre-ACA public disclosure bar also requires that, to be an "original source," the person must have also "voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4) (2006). Quest does not challenge the District Court's finding that Judd allegations on this point are adequate. *Judd*, 2012 WL 2435659 at *14.

*Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1160 (3d Cir. 1991). Direct knowledge "is based on first-hand information, and it is gained by the relator's own efforts, and not by the labors of others." *United States ex rel. Zizic*, 728 F.3d at 239 (citations and internal quotation marks omitted). Judd bears the burden of demonstrating that he is an original source. *See United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 551 (10th Cir. 1992).

Although Judd argues that he had firsthand knowledge of Quest's fraudulent scheme with healthcare providers other than HMA, there are no allegations in the Amended Complaint that support this. On the contrary, the allegations are almost exclusively about dealings between HMA and Quest, and the only mention of other medical practices in the Amended Complaint is Judd's allegation that "his discussions with other providers in South Eastern Pennsylvania . . . demonstrate that Quest's practices are not limited to HMA and they extend to other medical practices." (JA 57 ¶ 16.) This bare assertion is simply not enough. *See United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1162 (10th Cir. 1999) ("To establish original source status knowledge, a *qui tam* plaintiff must allege specific facts – as opposed to mere conclusions – showing exactly how and when he or she obtained direct and independent knowledge of the fraudulent acts alleged in the complaint."). Judd may be an original source regarding Quest's dealings with HMA, but that does not establish that he is an original source regarding Quest's dealings with other healthcare providers. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007) (Explaining that "3730(e)(4) does not permit such claim smuggling," because a relator's "decision to join

11

all of his or her claims in a single lawsuit should not rescue claims that would have been doomed by section (e)(4) if they had been asserted in a separate action.")[7]

## IV.

After resolving issues involving the public disclosure bar, the District Court dismissed with prejudice all of Judd's claims regarding healthcare providers other than HMA, whether arising before or after the enactment of the ACA, and whether based on his free-supplies theory or his discounted-testing theory, because they failed to satisfy the

---

[7] Judd also contends that he is an "original source" under the ACA-amended public disclosure bar. The relevant portion of the ACA-amended "original source" doctrine provides: "[O]riginal source means an individual who . . . has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions." 31 U.S.C. § 3730(e)(4)(B)(2) (2010). As discussed above, Judd has not shown that his allegations are "independent of" the public disclosures in *Urbanek*. Judd does not address this, however, and focuses instead on the "materially adds to" element. To date, only the Eighth Circuit has addressed the meaning of the phrase. In *United States ex rel. Paulos v. Stryker Corp.*, 762 F.3d 688, 694-96 (8th Cir. 2014), relying on the dictionary definitions of "add" and "materially," the Eighth Circuit opined that a relator fails to qualify as an original source if he fails to show that "his knowledge (even if gained early and independently) materially contributes anything of import to the public knowledge about the alleged fraud." *Id*. at 694-95.

Repackaging the argument he made regarding the applicability of *Urbanek*, Judd contends that the fraud he alleges "materially adds to" the publicly disclosed allegations in *Urbanek* because it occurred during an entirely different timeframe. In so arguing, Judd relies again on *United States ex rel. Booker v. Pfizer*, 9 F. Supp. 3d 34 (D. Mass. 2014) as he did in his arguments regarding which version of the public disclosure bar to apply. In that case, the actions alleged to implicate the public disclosure bar disclosed conduct in the years prior to 2008. *Id*. at 44. In contrast, the "central allegation" of the relators' action was that Pfizer's conduct continued after August 2009. *Id*. The District Court opined that, by virtue of the difference in timeframe, the relators' allegations "materially added" to prior disclosures and described a "'new' fraud." *Id*. at 46-47 & n.4. For the reasons discussed above, the few medical supplies included in Judd's allegations that were not mentioned in *Urbanek* and his alleged different timeframe do not establish a "new fraud" of the type alleged in *Booker*. Judd is not an "original source" for the purposes of the ACA-amended public disclosure bar.

requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Id.* at \*14-17. We agree.

Rule 9(b) provides, in relevant part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Thus, a plaintiff must allege "the who, what, when, where and how of the events at issue." *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (citation and internal quotation marks omitted). When the District Court rendered its decision, we had not yet specifically determined what Rule 9(b) requires of a FCA claimant. One week later, however, we resolved this issue in *United States ex rel. Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153 (3d Cir. 2014). There, we adopted the approach of the First, Fifth, and Ninth Circuits, which "have taken a more nuanced reading of the heightened pleading requirements of Rule 9(b), holding that it is sufficient for a plaintiff to allege 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" *Id.* at 156 (quotation and citation omitted).

Despite this more lenient standard, Judd's allegations fail. He provides no reason to believe that Quest submitted claims for Medicare reimbursement in connection with its kickbacks. Additionally, the paragraphs of his Amended Complaint that he argues contain specific allegations have nothing to do with Quest's dealings with non-HMA medical providers. (*See* JA 81 ¶ 126, JA 83 ¶ 129, and JA 84 ¶ 131.) The only mention he makes of other providers is a brief, conclusory assertion that "his discussions with other providers in South Eastern Pennsylvania . . . demonstrate that Quest's practices are

13

not limited to HMA and they extend to other medical practices." (JA 57 ¶ 16.) As we explained in *Foglia*, "describing a mere opportunity for fraud will not suffice." *Id*. at 158; *see also United States ex rel. Nunnally v. West Calcasieu Cameron Hospital*, 519 F. App'x 890, 894 (5th Cir. 2013) (finding the relator's allegations deficient under Rule 9(b) because he failed to allege, *inter alia*, "the identity of any physicians, actual inducements, or improper referrals."); *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1057 (9th Cir. 2011) (Explaining that a relator must do more than "identif[y] a general sort of fraudulent conduct [while] specif[ying] no particular circumstances of any discrete fraudulent statement."); *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 1000 (9th Cir. 2010) (finding the relator's complaint deficient because it "lack[ed] any details or facts setting out the who, what, when, where and how of the financial relationship or alleged referrals.") (citation and internal quotation marks omitted).

## IV.

For the reasons set forth above, we will affirm the judgment of the District Court.

14